We'll hear United States v. Dill. May it please the court, my name is Jay Ofsiavich and I'm here on behalf of K.C. Dill. Following 48 months of imprisonment, Mr. Dill is going to be on 10 years of supervision. This morning, we are here to challenge three of the conditions of supervised release that have been imposed upon him. We have questions regarding the treatment conditions that have been imposed. We have questions regarding the computer notification, the computer monitoring condition. And we have questions regarding the notification of risk condition. And it's my intention to try to address each of these three conditions this morning. As to the treatment conditions, Mr. Dill has been directed to participate in both sex offender treatment and mental health treatment. We're not challenging the requirement that he undergoes treatment. Our concern relates to the unenumerated aspects of the condition regarding the probation officer. Both conditions state in pertinent part that the probation officer will supervise the details of the defendant's participation in the program, including the selection of the provider and the schedule. Our concern is what it means by including. That is, the unenumerated aspects of this condition. We've raised questions in the district court whether this includes allowing the probation officer to access treatment. Your concern is the use of the word including? And there may be other things that could be there? Yes, Your Honor. What is included in the aspects of this? This has been a question that we've raised actually in another case. And a panel of this court earlier this year, in a summary order, did address this slightly. I apologize. I did not submit a Rule 28J letter on this. But in United States v. McGee's, Docket Number 18-832, the panel said that probation was merely given the discretion to decide administrative aspects of the treatment, such as the selection of the provider and schedule. In Peterson, we said if the district court intends the selection of the therapy, which happened here, to be mandatory, but leaves a variety of the details, including the selection of the therapy provided and the schedule with probation officer, such a condition of probation may be imposed. Why doesn't Peterson say that these types of details are permissibly delegated to probation? How is this different from Peterson, or Young for that matter, which was decided last year? Because our concern is what this actually means. And the question that we have is whether or not the probation officer all of a sudden can sit in on treatment sessions, whether the probation officer can access the record. If I can give you an example of why this becomes problematic, we've had, you know, in another case we've had a client, for example, as part of his treatment, he had to keep a masturbation journal. And all of a sudden his probation officer is questioning him on things that he had to write in his journal for his treatment provider. And this becomes difficult and it starts to raise questions on whether or not I want a district court judge deal with, we would have a list of details in the judgment of conviction that would be unlimited. You'd have, you can create a lot of hypotheticals. So if every type of detail of the treatment has to be approved by the court, how can you possibly do that? I think we need to just clarify what is the difference between what is administrative, which is establishing a schedule or approving a schedule. I think the treatment provider should really establish the schedule of how often someone should be going in for treatment. Involve their involvement with the selection of the provider and just ensuring that he's complying with the condition that is that he goes to treatment and that he is participating in treatment. And this can easily be met by the treatment provider reporting to the probation officer that yes, he is coming to the treatment program. Yes, he is actively participating. He is cooperative with it. Or they can report that no, he has not been coming to the treatment program or he's been coming to the treatment program and he has been creating trouble and we need to address that aspect of it. It does not mean that the individual has to be involved with questioning every little detail that the individual has to tell his treatment provider to gain effective treatment. And that's where our concern lies. What should the probation officer be doing? As a practical matter, if there were issues like that that developed during the treatment, the lawyer and the supervised release defendant could go back to the judge and say the probation this goes beyond the bounds of your, the imposition of this condition, right? You could always go back to the judge. The example that you gave about the journal, you could go back to the judge. We're trying to avoid these problems from arising in the first place because what winds up happening is that if the client decides that hey, I don't want to answer these questions or I feel I shouldn't have to answer these questions, he's going to be violated. And all of a sudden that raises this to a whole other level that we have to address. If we can clear this up beforehand, we can actually meet the requirements of what supervised release is supposed to do, and that's to try to transition our client back into society. In my experience, there is a dialogue between the probation officer and the defendant and counsel on these kinds of problems that arise before, I mean, the probation officer doesn't run in every time immediately to ask for a violation. I mean, it's hard to imagine what the phrasing of a provision could be that would accommodate your concerns. We actually believe, Your Honor, that there could be a very simple way of phrasing it, and it's not too far off from what we have. Part of it is removing the language. One possible example could be the probation officer will supervise the administrative aspects of the treatment program by selecting or approving the treatment provider, overseeing the schedule, and receiving reports from the provider regarding the defendant's participation with the program. And I think that would... No, that's not different from what's there now. Because all of a sudden... Ending now. Because what we're trying to do is limit the probation officers interfering in the treatment by going in and sitting on sessions, which we have found that probation officers in the probation officers accessing treatment records. I find it interesting, there's another special condition that was imposed on our client that we're not challenging here, but it shows some of the differences that's happening. There's a search condition that was imposed, which reads, if I may, the defendant shall submit to a search of his person, property, vehicle, place of residence, or any other property under his control based upon reasonable suspicion. All of a sudden, now here we have his property being held to a higher standard than his thoughts. And when the probation officer is sitting in on treatment sessions, when the probation officer's aspect of getting a hold of the file and going into these aspects interfering with the treatment itself, it's a much lower standard because the judge is allowing this to happen, and the probation officer can do this on their own. In U.S. v. D.U.P.E.S., Dupes, Second Circuit, 2006, we said probation officers could review sex-offended treatment records, so you're asking us essentially to overrule that, aren't you? Well, I think Dupes, we can view that as limited to that particular case. I think if we need to have a more restrictive condition where this is going in, I think there needs to be specific findings as to why this is necessary for an individual client. Conditions of supervised release are supposed to be the least restrictive, and the way this is, this becomes more restrictive, affecting his liberty interests by allowing the probation officer to access his treatment records and infringing on his privacy interests. Do you have some time for rebuttal? We'll hear from the government. Thank you, Your Honor. Good morning. May it please the Court, my name is Tiffany Lee, and I represent the United States. Turning to the condition of treatment, the way the issue was Of course, there was one thing that was troubling me with respect to the, the, the, the, the mental health treatment. The district court did seem to say that the probation officer could sit in on a session. That's a little troubling to me. Does the condition authorize probation officers to sit in on a treatment session? I'm looking at the top of A81. Yes. The district court basically viewed the, the, the fact that in terms of when probation is involved in its executive function, in ensuring that the sentence imposed is being complied with, particularly during the term of supervision, the district court states numerous times, I count on probation, in essence, to be my eyes and ears. And so, I think that the district court was saying that it could very well be that participation, or at least there may be instances in which a probation officer may sit in on a treatment. You know, that could be as a result of the, the provider wanting a probation officer there or whatever. But in, I think You have to make a particular justification for that level of intrusion. In other words, rather than it be a condition a judge imposes at the start of sentencing, it would be that a treatment provider, someone would have to come back to the probation officer and then the court and say, look, we think there's a special need to be in this session. Why, why shouldn't there be a particular showing for something as intrusive as that? Your Honor, I, I don't think that's where we are with respect to the way the objections were launched in this particular case. Because in essence, below, the main objection to the treatment conditions had to do with the concept of the impermissible delegation of authority. And then, you know, basically counsel asserted the same arguments that they had asserted in the McGee's case, that I don't know what it means. What does it mean by details? That's a delegation of authority to allow the probation officer to decide when he or she thinks they need to attend a session. Isn't that a delegation? But I don't think it's an express delegation. It's just the, the way the treatment condition is worded is you are to attend treatment and probation will supervise the, supervise the details of that, of, of the treatment, including selection of a provider and everything. It wasn't, it wasn't a delegation. It has to do with, again, the supervision, the executive function of it. It doesn't have to do with whether or not the person gets released from before. Here, the condition was basically you have to go to treatment and that, you know, details how that treatment is going to be administered. Probation can be involved with that. But is it, is it the government's position that the judgment as drafted authorizes the probation officer to sit in on treatment sessions? I don't, I, it's, it's unclear. It depends on, you know, it depends on the variables. It's unclear. I mean, what is the government's, how should we interpret that? I think, I think the government should interpret it. Excuse me. I'm, I think the court should interpret it as it, it could permit, it could permit that to happen just because we don't know, like in terms of any given treatment provider, what their mandates are or what their policies are in terms of having a probation, a probation officer participate in that. But that was not really quite before the issue of the court because, excuse me, that wasn't quite the issue framed as the objection to that condition specifically. Well, the, the objection is that it's, among other things, that it's overly intrusive and I am concerned about a condition that authorizes probation officers to sit in on treatment sessions without, without specific permission from the district court. To the extent that there is an issue with that, if, for example, someone gets violated for noncompliance because of the fact that they refuse to attend the treatment, you know, session because I don't want my probation officer to be there, then that is something that could be brought back again to the district court or could be submitted to the district court for, in terms of for modification. As it stands, as the way it was argued below, counsel was trying to come up with examples in which, was trying to come up with a list of examples to illustrate the breadth of what does details mean and she, she turned to the issue of the fact that probation or was being, was denying her access to her client's medical records through the treatment process. In which case the district court said, listen, I, I, I understand that, you should totally have access, but the district court basically was saying this condition as it is phrased now, which had been modified post-Peterson, she was essentially saying this condition that I'm imposing now is not an incompressible delegation and it gives enough authority to probation to do its job in terms of being the eyes and ears for the court. Um, and, and, and, you know, I would turn this court's attention to, um, uh, McGee's where especially, um, I know counsel at, at oral argument, Mr. Oviab, Oviabich raised the same concern about, you know, you know, clients having to keep masturbation journals and the panel and McGee said, listen, probation is given the discretion to, to decide the administrative aspects of the treatment, such as selection of provider and schedule. And noted that probation has an extensive executive function. They have an extensive executive function, but to the extent there is a concern where that can be resolved either through a modification of the condition or in application, if, you know, during the violation process, if there is any concern about that. In your turning to the, um, notification of risk condition, your, your 28 J letter says two other panels are, are, are hearing challenges to that condition. Yes. In the exact same condition. It's the exact, the exact same standing order, um, same issues that are being raised here. Yes. Exact same issue. And I would note your honor, um, the government has been tasked with, uh, submitting a supplemental brief to last week's panel in United States versus McCallum to address, uh, certain issues that were raised. A third panel then, McCallum, because your letter refers to Trafficante and Cotto. Oh, there, because, um, uh, counsel, Mr. Oviabich, 28 J letter actually refers to, uh, other cases as well, including McCallum. So I think there's a total of six, seven, because there are two more that are briefed coming up in the spring. Again, the exact same issue. Um, and, and, and two... We're behind on those cases. You, you, you're, you're behind at least three and, uh, uh, yeah, and you're in the middle for, for a bunch, uh, there. And with respect to that condition, again, that condition, the earlier draft of that condition, pre-bolts actually just tracked the language of 5D1.3 in the sentencing guidelines. And, um, uh, basically the standing order create, builds in a specificity that I, I don't believe is in the current guideline application note with respect to that condition. Court has to decide whether... Correct. The court... It's a notice, yeah. Correct. Um... And that was not the case before? No, um, no, exactly. That's not the case. The case before you, with respect to the notification of risk, is whether the standing order still represents an impermissible delegation of authority. And it's the government's position that it does not, because the crucial decision making is really with the court, whether or not the person is a risk. And then the second part of it, in terms of notification, is really an execution of, uh, it's an administration of that determination, whether or not this pose, this person poses a risk. And as the standing order is written, it actually talks about, uh, the question in terms of risk of what. It's the risk, it's the risk of committing future crimes. So it's not just a vague risk, uh, uh, notification, it's, it's particular to whether or not the defendant will commit another crime. Um, unless the court has any further questions, the government rests on its submissions. You, you have a next case as well? Uh, I will be, actually, uh, I have, uh, Assistant United States Attorney Melissa Marangola. She was the trial attorney on both Dill and the following case, and I'm the appellate attorney. No, I, I was just wondering whether you're going to argue the next case as well. No, no, she, she will be arguing. Okay, thank you. We'll hear the rebuttal. Thank you, Your Honor. Uh, there's question, questions have arisen about Peterson and the language coming from Peterson. I think it's important to note that Peterson was not trying to write a condition of supervised release when it put that language out there. They were just trying to point out some of the aspects of what a probation officer is doing in supervising a defendant on this condition. The problem arose when someone decided to turn that language and just adopt that into the condition without thinking it through and trying to write a condition that is workable and can go, uh, and function. And that's why we are, we are here. We're trying to, uh, get that condition to make it workable so that we understand what the administrative aspects are versus going beyond. No, but you could have this then with every supervised release condition, like random home visits or visits to a person's place of work, right? None of those things are specified. The judge orders it and then the probation officer carries it out, right? Well, because Suppose someone was visiting someone's place of work every day, right? You make the same argument to us that this is overly intrusive, it's unreasonable. Every single condition of supervised release, you create hypotheticals that then the court would have to anticipate and address in a judgment of conviction. I think there's a difference between saying whether or not someone can, uh, visit one of our clients at their place of employment versus going and going every day. There, we're not arguing that whether or not they can do the visit. The question becomes how they're doing the visit. Here we're saying, what is an administrative aspect? Here you're saying it's not that we know they're going to do the treatment, it's how they're doing the treatment, right? The same argument. Well, again, the purpose of the condition is to ensure, you know, the monitoring by the probation officer is to ensure that one, he is in a treatment program, that he is attending the treatment program, and that he's participating in the treatment program. That's the administrative aspects that we're concerned with. Uh, we don't want to go beyond that, really, and that's the problem that we have here, as we see when the judge said that, yes, we raise this question based on what we've been seeing and what we've been experiencing with our clients. Dialogue with the treatment provider, do you think that's off limits as well, or is the probation officer at the discretion to ask for information from the provider? I think it depends. They have to go back to the court. I think it depends on the type of information that's being asked. I think compliance really is limited. There may be a need, if the treatment provider is saying it's time to, he's done with treatment, he's completed it, then there might be a more detailed report necessary, but I think daily reports or weekly reports or full access to the file are not necessary, and I think those go beyond administrating the condition. Uh, if I can just make one brief note, if you'll bear with me, regarding notification of risk, since that came up. There are a number of cases. Seems like there are a number of cases ahead of us, and we're probably going to need to wait for them. Yes, and one of the things to note with those cases is some of them raise different theories of why we think their condition is problematic, so you just want to, may want to look at those as you're considering the condition. Thank you.